■ JENNIFER M. WEBSTER, Respondent, v TODD C. WEBSTER, Appellant. SUSAN B. MARRIS, as Law Guardian, Appellant. [725 NYS2d 109] —Cardona, P. J. Appeal from a judgment of the Supreme Court (O'Brien, III, J.), granting, *inter alia*, plaintiff a divorce and awarding physical custody of the parties' child to plaintiff, entered March 9, 2000 in Madison County, upon a decision of the court.

Plaintiff and defendant were married in November 1996. On January 24, 1998, when plaintiff was approximately five months' pregnant, defendant dropped plaintiff off at work and told her he would pick her up later. He returned to the marital home and removed his belongings and other items of personal property. Defendant then had his stepfather call plaintiff's parents to tell them that defendant was leaving plaintiff and that they should pick her up after work. Defendant's abrupt departure from the marriage caused plaintiff physical and emotional stress and her pregnancy was apparently a difficult one. Shortly after defendant's departure, plaintiff commenced this action for divorce based upon cruel and inhuman treatment and requested sole custody of the couple's unborn child. In his responsive pleading, defendant sought joint custody.

Plaintiff gave birth on April 30, 1998, without defendant in attendance. Defendant found out about his son's birth several weeks later and obtained a court order permitting visitation for one hour three days a week at plaintiff's home. At one point, plaintiff made a complaint of child abuse that was determined to be unfounded. Defendant's mother, in turn, made an unfounded complaint of child abuse against plaintiff. In September 1998, defendant was awarded unsupervised visitation on his days off from work away from plaintiff's home. A four-day nonjury trial was held wherein each party argued for sole legal and physical custody of the child. Supreme Court, *inter alia*, granted a divorce to plaintiff on the ground of cruel and inhuman treatment and awarded the parties joint legal custody of their son with plaintiff having primary physical custody and defendant visitation. Defendant appeals, challenging the grant of primary physical custody to plaintiff. The child's Law Guardian also appeals arguing that Supreme Court erred in not granting plaintiff sole legal custody.

At the outset we note that, although Supreme Court indicated that its temporary orders represented an initial physical custody award, it is clear that the court properly treated this action as an initial custody determination after a plenary trial

and reviewed the appropriate factors (*see, Friederwitzer v Friederwitzer*, 55 NY2d 89). It is well settled that "[i]n every custody matter, the court's primary concern must be centered on what would be in the best interest of the child" (*Matter of Caccavale v Brown*, 271 AD2d 717, 718; *see, Eschbach v Eschbach*, 56 NY2d 167, 171). "To properly make such a determination, an assessment must be made of the totality of [the] circumstances, weighing all relevant factors [citation omitted]" (*Matter of Caccavale v Brown, supra*, at 718). Notably, "[s]ince the trial court is presented with the unique opportunity to observe the demeanor of the witnesses testifying before it and to assess their credibility * * * deference will be accorded to its findings unless they lack a sound and substantial basis in the record" (*id.*, at 718 [citations omitted]).

Here, there is a sound and substantial basis for Supreme Court's award of primary physical custody to plaintiff. Plaintiff, a receptionist in a doctor's office, has been the primary caretaker of the child since his birth and was found to be a devoted and nurturing parent. When plaintiff works, she leaves the child with her parents when defendant is not exercising his visitation. Plaintiff is living with a male companion in a well-tended home with a bedroom for the child. The companion's undisputed testimony is that he has a good relationship with the parties' child. Defendant, who works with disabled children, has a less traditional job schedule and works from approximately 3:15 P.M. to 11:15 P.M. and also works three weekends every month. Supreme Court also found that defendant provided a nice home with an extra bedroom for his son and he and the child have a very good relationship. At the time of trial, it was undisputed that the parties' son was a healthy, happy child who was thriving under the love and care of his parents and extended families.

Considering the totality of the circumstances, we find no reason to disturb Supreme Court's finding that the child's best interest is served by the award of primary physical custody to plaintiff. Although plaintiff did make an allegation of sexual or physical abuse that turned out to be wholly unfounded, her testimony on the matter reflects a genuine belief that she thought that the child was mistreated. This is not a case where a party has made several unfounded allegations of sexual abuse (*see, e.g., Matter of Turner v Turner*, 260 AD2d 953, 954) and it appears from the timing of the incident that plaintiff was still experiencing the effects of distrust engendered by defendant's departure from the marital residence.

Significantly, plaintiff testified that she never speaks badly of defendant in front of the child and does not allow others to

do so (*cf.*, *Young v Young*, 212 AD2d 114, 123). Although there was testimony that plaintiff interfered with visitation on more than one occasion raising concern about her parental ability (*see*, *Matter of Turner v Turner*, *supra*, at 954), it appears that this difficulty arose from plaintiff's distrust as to defendant's ability to care for the child when he is sick.[1] Supreme Court was properly concerned with the several described instances where plaintiff clearly allowed her bitterness towards defendant to interfere with her judgment. However, the court was careful not to allow its disapproval of some of plaintiff's conduct to outweigh the many positive contributions that she made towards providing a stable and nurturing environment for the child. Notably, while the court also found defendant to be a fit parent, it was concerned that defendant failed to describe a concrete, specific plan for caring for his son in the event that he was awarded primary physical custody. Therefore, under the particular circumstances herein, we will not disturb Supreme Court's determination in this regard.

Finally, although defendant advocates the continuance of joint legal custody and plaintiff did not appeal Supreme Court's judgment, the Law Guardian contends that Supreme Court's award of joint custody must be reversed because plaintiff and defendant are embattled and embittered parents.[2] Although it is true that "[j]oint custody is appropriate only in those situations where the parents' relationship is amicable and stable" (*O'Connor v O'Connor*, 146 AD2d 909, 911), upon examination of the record as a whole, we conclude that the parties' interaction is not "so acrimonious that they are incapable of putting aside their differences" (*Matter of Meres v Botsch*, 260 AD2d 757, 759; *see*, *Matter of Burnham v Basta*, 241 AD2d 628, 629, *lv denied* 90 NY2d 812). For example, the parties cooperate to maintain a reasonable schedule of visitation wherein the child is exchanged at the home of plaintiff's parents and defendant provides a copy of his work schedule every month so that adequate arrangements can be made. Supreme Court noted that despite the occasional bitter exchanges, there were "periods of tranquility" that existed between the two which were confirmed by defendant's acknowledgment that sometimes he and plaintiff could speak pleasantly. Significantly, we note that Supreme Court was very careful to delineate a detailed course

---

1. Notably, Supreme Court discounted her reasoning and specifically ordered that visitation should not be interrupted for illness in the absence of written documentation from the pediatrician.

2. The Law Guardian on appeal is not the same attorney who represented the child at trial. The Law Guardian at trial recommended that defendant be awarded sole custody.

of conduct to be followed and indicated that it would closely scrutinize the parties' adherence thereto. In conclusion, since there appears to be at least some level of communication and cooperation up to this point which has inured to the benefit of the parties' child, we defer to Supreme Court's assessment of this difficult situation to determine the present custodial arrangement.

Mercure, Carpinello, Mugglin and Rose, JJ., concur. Ordered that the judgment is affirmed, without costs.