In the Matter of ANN E. BLANCHARD, Appellant, v DAVID M. BLANCHARD, Respondent. [758 NYS2d 206] —Cardona, P.J. Appeal from an order of the Family Court of Fulton County (Jung, J.), entered October 5, 2001, which, inter alia, granted respondent's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior custody order.

Petitioner (hereinafter the mother) and respondent (hereinafter the father) married in 1993. The parties have two children, Matthew (born in 1994) and Rachel (born in 1996). In July 1999, by temporary order entered upon consent, the parties stipulated to share joint legal custody with primary physical residence of the children with the mother subject to the father's exercise of physical custody every other weekend from Friday at 6:00 P.M. until Sunday at 6:00 P.M., with alternating Mondays and Wednesdays one week and Tuesdays and Thursdays the following week, from 5:00 P.M. to 8:00 P.M. and "such other further and different custodial access as the parties shall mutually agree." Thereafter, by further stipulation, the parties incorporated this temporary order in their judgment of divorce entered March 8, 2000.

In January 2001, the mother filed two petitions, the first to enforce the parties' divorce judgment and the second to modify it, both essentially seeking to compel the father to notify her prior to having the children's hair cut and requiring him to transport them both ways when exercising his custodial access. In February 2001, the father also filed two petitions. The first sought enforcement of the divorce judgment alleging a missed weekday period of custodial access and to require notification of the children's whereabouts when they are not in school. The second sought modification of the custody provision of the divorce judgment to, inter alia, change primary physical custody from the mother to him.

The petitions were consolidated for trial. Family Court dismissed the enforcement petitions and modified custody by awarding the father sole legal custody of the children and granted the mother certain visitation. On appeal, the mother contends, inter alia, that the father failed to demonstrate sufficient changed circumstances to warrant modification of the existing custodial arrangement.

We have noted that "[w]here a voluntary agreement of joint custody is entered into, it will not be set aside unless there is a sufficient change in circumstances * * * and unless the modification of the custody agreement is in the best interests of the children" (Matter of Gaudette v Gaudette, 262 AD2d 804, 805 [1999], lv denied 94 NY2d 790 [1999]; see Matter of Harper

*v Jones*, 292 AD2d 649, 650 [2002]). A finding that " 'the relationship between joint custodial parents [has] deteriorate[d] "to the point where they simply cannot work together in a cooperative fashion for the good of their children" ' " (*Matter of Harper v Jones, supra* at 650, quoting *Ulmer v Ulmer*, 254 AD2d 541, 542 [1998], quoting *Matter of Jemmott v Jemmott*, 249 AD2d 838, 839 [1998], *lv denied* 92 NY2d 809 [1998]) establishes "a sufficient change in circumstances to warrant modification of the parties' prior custody agreement" (*Matter of Jemmott v Jemmott, supra* at 839). The focus then shifts to the award of custody based upon the determination of best interests (*id.* at 839).

Here, Family Court found that the parties could no longer communicate to make joint custody feasible. Our review of the record, as a whole, does not support that conclusion. Although there is no doubt that the parties have had difficulties communicating at times, it is our opinion that their relationship is not " 'so acrimonious that they are incapable of putting aside their differences' " (*Webster v Webster*, 283 AD2d 732, 734 [2001], quoting *Matter of Meres v Botsch*, 260 AD2d 757, 759 [1999]). For example, since the father had most of the summer of 2001 off, the parties' agreed that he would have the children during the mother's custodial periods while she worked. They also concurred on separate summer vacations with the children. The parents worked out additional access for some special activities for the father with the children, as for example, certain sporting events and family functions. The mother consented to his request to change their daughter's preschool, specifically testifying that she thought it was in her best interest. We note respondent's wife testified that in the month preceding the hearing, she observed that the parties were able to communicate and agree on issues. Significantly, the father testified that he respected the mother as a person and expressed confidence that he would eventually be able to work with her regarding the children. In short, given the existence of a modicum of communication and cooperation (*cf. Matter of Barber v Stanley*, 260 AD2d 744 [1999]), the fact that both parties are fit and loving parents and demonstrate a strong desire to share in the upbringing of their children (*see Matter of Meres v Botsch, supra* at 758; *Palmer v Palmer*, 223 AD2d 944, 945 [1996]), we find that their relationship has not so deteriorated that they cannot work together in a cooperative fashion for the good of their children. Therefore, we conclude that joint custody should continue.

There is, nevertheless, a sufficient change in circumstances

warranting modification of the father's physical custodial access (*see Matter of Darrow v Burlingame*, 298 AD2d 651, 652 [2002]). Given the length of his involvement with both children, his fitness and ability to guide and provide for their intellectual and emotional development, the stability and suitability of his home environment (*see Matter of Meola v Meola*, 301 AD2d 1020, 1021 [2003]; *Matter of Morgan v Becker*, 245 AD2d 889 [1997]; *Matter of De Losh v De Losh*, 235 AD2d 851, 852 [1997], *lv denied* 89 NY2d 813 [1997]), the children's expressed desire to spend more time with him and the court evaluator's recommendation of it, we find an increase in the father's custodial access to be in the children's best interests. Remittal of this matter to Family Court for that purpose is unnecessary because the record is sufficiently complete to allow this Court to make the determination to avoid further delay (*see Matter of Chittick v Farver*, 279 AD2d 673 [2001]; *Matter of Hilliard v Peroni*, 245 AD2d 1107 [1997]). Accordingly, we award custodial access of the children commencing 10 days from the date of this decision, as follows: (1) to the father, every other "weekend" from Wednesday at the close of school, or from 3:00 P.M. if school is not in session, through Monday morning at 7:45 A.M., or through Monday evening at 7:00 P.M. if school is not in session; each Thursday, when not followed by his weekend of custodial access, from the close of school until 8:00 P.M.; Easter Sunday, Memorial Day, Labor Day in odd-numbered years beginning in 2003, from 9:00 A.M. until 8:00 P.M.; New Year's Day, July 4th, Thanksgiving Day in even-numbered years beginning in 2004, from 9:00 A.M. until 8:00 P.M.; Christmas Day 2003 beginning Christmas Eve at 4:00 P.M. until Christmas morning at 10:00 A.M. and, in even-numbered years, Christmas Day beginning at 10:00 A.M. until 9:00 P.M.; Father's Day from 9:00 A.M. until 8:00 P.M.; each child's birthday from 9:00 A.M. until 3:00 P.M.; the months of July and August (subject to the mother's custodial access as hereinafter set forth) commencing July 1st at 9:00 A.M. and ending September 1st at 5:00 P.M.

(2) to the mother, during the months of July and August, every other "weekend" from Friday at 3:00 P.M. through Monday at 8:30 A.M., commencing July 3, 2003; each Wednesday, when not followed by her weekend of custodial access, at 3:00 P.M. until 8:00 P.M; July 4th, Thanksgiving Day, New Year's Day in odd-numbered years beginning in 2003, from 9:00 A.M. until 8:00 P.M.; Easter Sunday, Memorial Day, Labor Day in even-numbered years beginning in 2004, from 9:00 A.M. until 8:00 P.M.; Christmas Day 2003 beginning at 10:00 A.M. until 9:00 P.M. and in even-numbered years, beginning

Christmas Eve at 4:00 P.M. until Christmas morning at 10:00 A.M.; Mother's Day from 9:00 A.M. until 8:00 P.M.; each child's birthday from 3:00 P.M. until 9:00 P.M.; at all times when the father is not exercising his custodial access as specified herein.

Each party shall also be entitled to exercise two weeks of uninterrupted custodial access each summer with the children, which may be exercised separately or consecutively, upon written notice to the other party to be sent on or before June 15th. Custodial access on holidays, Mother's Day, Father's Day and the children's birthdays shall take precedence over all other periods of custodial access and each party's two weeks of uninterrupted custodial access shall take precedence over regularly scheduled custodial access. Each party shall be responsible for transporting the children during all periods of his or her custodial access. Since circumstances change and flexibility is necessary and encouraged, the parties may have such other, further and different custodial access, as they may, from time to time, mutually agree.

We need not address the parties' remaining contentions.

Mercure, Carpinello, Lahtinen and Kane, JJ., concur. Ordered that the order is modified, on the law and the facts, without costs, by reversing so much thereof as awarded sole legal custody of the children to respondent; joint legal custody reinstated and custodial access awarded to the parties as set forth in this Court's decision; and, as so modified, affirmed.