Egan Jr., J.
Cross appeal from an order of the Family Court of Ulster County (McGinty, J.), entered November 21, 2014, which, among other things, partially granted petitioner’s application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the unmarried parents of a daughter (born in 2011). The mother has a Master’s degree in occupational therapy, is employed full time by the New York City Department of Education and lives in New Jersey; the father, who graduated from high school and massage therapy school, is employed as a massage therapist, primarily works on weekends and resides in Ulster County. At present, the parties live approximately 90 minutes away from one another.
As a result of ongoing problems in their brief relationship, the parties separated shortly after the child’s birth and, in August 2012, apparently entered into a stipulation — later reduced to a court order — awarding them joint legal custody of the child with primary physical custody to the mother and extended parenting time (Monday mornings to Thursday mornings) to the father.[1] Shortly thereafter, the mother accepted her current employment in the Bronx in order to obtain better health insurance coverage for herself and the child. As a result of her new schedule, the mother no longer was able to pick up the child at the appointed time on Thursday mornings and attempted to work out a new arrangement with the father. When the father refused, the mother commenced the first of these *1136 proceedings seeking to modify the visitation schedule. Difficulties between the parties continued, prompting the mother to twice amend her petition and, ultimately, to seek sole legal and physical custody of the child. In response, the father cross-petitioned for primary physical custody.
Following a hearing, Family Court found that the mother’s new work schedule constituted the requisite change in circumstances. As to whether modification of the prior custody arrangement was warranted, Family Court concluded that, despite their well-documented and long-standing difficulties communicating with one another, the parties nonetheless had demonstrated an ability to work together in a cooperative fashion; hence, Family Court continued the award of joint legal custody. With respect to the issue of physical custody, Family Court made a minor adjustment to what effectively was the existing split custody arrangement, with the father having physical custody of the child from Sunday evenings to Wednesday evenings and the mother having physical custody of the child during the remaining time period. The mother now appeals, and the father cross-appeals from Family Court’s order.[2]
“A parent seeking to modify an existing custody order first must demonstrate that a change in circumstances has occurred since the entry thereof that is sufficient to warrant the court undertaking a best interests analysis in the first instance; assuming this threshold requirement is met, the parent then must show that modification of the underlying order is necessary to ensure the child’s continued best interests” (Matter of Menhennett v Bixby, 132 AD3d 1177, 1179 [2015] [citations omitted]; see Matter of Demers v McLear, 130 AD3d 1259, 1260 [2015]). Here, despite the father’s protestations to the contrary, the change in the mother’s work schedule — and the father’s corresponding unwillingness to consider an alternative custodial arrangement — constituted a sufficient change in circumstances to trigger an inquiry into whether modification of the existing order was required in order to ensure the child’s continued best interests.
As to the custody award fashioned, “[a]lthough an award of joint custody is an aspirational goal in every custody matter, *1137 such an award is not feasible where . . . the parties’ relationship and history evidences an inability to work and communicate with one another in a cooperative fashion” (Matter of DiMele v Hosie, 118 AD3d 1176, 1177 [2014] [internal quotation marks and citations omitted]). To our analysis, the feasibility of a joint legal custody arrangement here indeed is a close case. In this regard, there is no question that the parties historically have had a contentious relationship, and their decision to involve members of their respective families in the custody exchanges — however sound their reasons may have been for doing so — appears to have only exacerbated their difficulties. At the time of the underlying hearing, the parties were communicating solely by email, and the father’s disdain for the mother — as evidenced by the tone and demeanor expressed in the emails contained in the record — is concerning. The record further reflects mutual instances of unilateral decision making, which has only magnified the discord between the parties and, further, has resulted in the involvement of law enforcement on numerous occasions. That said, both parties acknowledged the need to work together in a cooperative fashion for the sake of their daughter and recognized the value of effective co-parenting, and the record reflects that they have been able to reach an accord on certain issues relative to the child’s welfare, including whether and when to vaccinate her. The record also reveals that the more recent custody exchanges have taken place without incident, and the father testified as to a gradual improvement in the parties’ relationship. According due deference to Family Court’s “superior vantage point of observing the demeanor of the witnesses who testified before it” (Matter of Thompson v Gibeault, 305 AD2d 873, 874 [2003]; see Matter of Matthew K. v Beth K., 130 AD3d 1272, 1274 [2015]; Matter of Vanita UU. v Mahender VV., 130 AD3d 1161, 1164 [2015], lv dismissed and denied 26 NY3d 998 [2015]), and based upon the present record, we cannot say that Family Court’s decision to continue joint legal custody lacked a sound and substantial basis in the record.
With respect to the issue of physical custody, upon due consideration of all of the relevant factors, we find that Family Court’s decision to continue the split custody arrangement— based upon the age of the child at the time of the hearing[3] —finds ample support in the record. To the extent that the attorney for the child now argues that this matter should be *1138 remitted to Family Court because the split custody arrangement fashioned by that court in November 2014 no longer will be workable once the child enters school in September 2016, we disagree. Here, Family Court dealt in an appropriate fashion with the custodial situation as it existed at the time of the hearing. When two parents live some distance apart, a custodial arrangement that makes sense for a three-year-old preschooler indeed may prove to be unworkable once that child is five years old and enters kindergarten. As the child here nears school age, the parties have at least three options: reach an agreement as to which parent will have primary physical custody, relocate so that they are residing within the same school district or seek the assistance of Family Court by way of a modification proceeding.[4] At this juncture and on this record, however, we are not inclined to disturb Family Court’s continuation of the split custody arrangement. The parties’ remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.
McCarthy, J.P., Rose, Lynch and Clark, JJ., concur. Ordered that the order is affirmed, without costs.

. Both the parties and Family Court state that this order was the product of an agreed-upon stipulation; the order itself indicates that it was rendered after a hearing.

. The father, as so limited by his brief, argues only that Family Court erred in concluding that the mother established the threshold change in circumstances. Otherwise, the father requests that Family Court’s order be affirmed. Accordingly, any remaining arguments that the father may have had are deemed to be abandoned (see Matter of Owens v Chamorro, 114 AD3d 1037, 1038 n 1 [2014]; Matter of Jodi S. v Jason T., 85 AD3d 1239, 1241 n 2 [2011]).

. The child was two years old when the hearing commenced and approximately three years old when Family Court rendered its resulting decision.

. Should this last option become necessary, we are confident that Family Court will expedite the proceeding to assure the child’s timely enrollment in school.