G.K. v S.T. (2026 NY Slip Op 01309)

G.K. v S.T.

2026 NY Slip Op 01309

Decided on March 10, 2026

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: March 10, 2026

Before: Renwick, P.J., Kennedy, Friedman, Mendez, Hagler, JJ. 

Index No. 365297/21|Appeal No. 6034-6035-6036-6037|Case No. 2024-00356, 2024-04765, 2024-04766|

[*1]G.K., Plaintiff-Respondent,
vS.T., Defendant-Appellant. 

The Law Firm of Poppe & Associates, PLLC, New York (Kamelia Poppe of counsel), for appellant.
Sanjay Tewari M.D., appellant pro se.
Blank Rome LLP, New York (Brett S. Ward of counsel), for respondent.
Law Offices of Rosemary Rivieccio, New York (Rosemary Rivieccio of counsel), attorney for the children.

Order, Supreme Court, New York County (Kathleen Waterman-Marshall, J.), entered on or about November 7, 2023, which, after a trial, awarded plaintiff-wife sole legal and residential custody of the subject children, with supervised parenting time to defendant-husband on specified conditions, unanimously affirmed, without costs.
Order, same court and Justice, entered on or about July 8, 2024, which, after a trial, to the extent appealed from as limited by the briefs, precluded the husband from testifying about the financial documents in the trial record, imputed income to the husband in the amount of $1 million dollars per year, set an income cap of $500,000 for the purposes of calculating child support and post-divorce maintenance, awarded the wife post-divorce maintenance for a period of 38 months, awarded the wife counsel fees in the amount of $906,776.45 and expert fees in the amount of $5,000, and denied the husband's request for the justice's recusal, unanimously modified, on the law, to reduce the counsel fee award by $267,454.84, and otherwise affirmed, without costs.
Appeal from order, same court and Justice, entered on or about July 8, 2024, which appointed the wife as receiver to effectuate the sale of marital property, unanimously dismissed, without costs, as moot.
The court's custody determination is supported by a sound and substantial basis in the record. The court provided a detailed analysis, carefully weighing each relevant custody factor, and ultimately concluded that, based on the totality of the circumstances, the children's best interests were served by awarding sole custody to the wife (see Matter of Keoshia R. v Lamont D., 191 AD3d 614, 615 [1st Dept 2021]). Specifically, the court considered the fact that the wife was financially stable and responsible, and had built a safe, stable, and loving environment for the children (see Matter of Steven O. v Trisha C., 171 AD3d 408, 408 [1st Dept 2019]). The wife was a fit parent, who exercised sound parental judgment and was more than capable of guiding the children and providing for their intellectual and emotional development (see Matter of Frank G. v Crystal C., 198 AD3d 455, 456 [1st Dept 2021]). The wife also demonstrated a greater willingness and ability to cooperate with the husband for the benefit of the children (see Matter of Scott W. v Krizzia G., 194 AD3d 406, 407 [1st Dept 2021]) and was able to put the children's needs above her own (see Karim R. v Salamatou S., 143 AD3d 471, 472 [1st Dept 2016]). Additionally, the court properly considered the parties' inability to co-parent (see Matter of Markis L. v Jacquelyn C., 189 AD3d 580, 581 [1st Dept 2020]) and the history of domestic violence perpetrated by the husband against the children and the wife (see Zappin v Comfort, 155 AD3d 497, 498 [1st Dept 2017], appeal dismissed 31 NY3d 1077 [2018]). These findings and determinations should be accorded great deference because the court had the opportunity to assess the witnesses' demeanor and credibility.
Furthermore, the court providently exercised its discretion in awarding the husband access that would facilitate his successful reintegration into the children's lives. The record shows that the husband failed to avail himself of the supervised visits for several years, despite knowing that the children wished to see him (see Matter of Lisa W. v John M., 142 AD3d 879, 880 [1st Dept 2016], lv denied 28 NY3d 912 [2017]). Given his prolonged separation from the children and his prior inappropriate statements to them during the visits, the court acted within its discretion by requiring the husband to participate in parent-training sessions with the children's therapist as part of the visitation order (Family Court Act § 656[f]; see Matter of Melissa G. v John W., 143 AD3d 406, 407 [1st Dept 2016]; Matter of John A. v Bridget M., 16 AD3d 324, 331 [1st Dept 2005], lv denied 5 NY3d 710 [2005]). It also properly considered the children's wishes and gave them the weight commensurate with their level of maturity and age (see Matter of Jermaine N. v Tatiana T., 231 AD3d 545, 545 [1st Dept 2024]).
The husband's attack of the custody award on the ground that he was deprived of a fair and impartial trial fails in light of our finding that the court's determination has a sound and substantial basis in the record. In any event, the record demonstrates that the court listened to the testimony, made appropriate rulings, treated the parties with respect, and did not have a predetermined outcome of the case in mind during the trial (see Matter of Baby Girl Z. [Yaroslava Z.], 140 AD3d 893, 894 [2d Dept 2016]). The husband chose to proceed pro se after previously retaining an attorney, and while the courts may afford a pro se litigant some latitude, a pro se litigant "acquires no greater right than any other litigant" (Bloom v Hilpert, 222 AD3d 574, 575 [1st Dept 2023] [internal citation and quotation marks omitted]). Moreover, any request for a mistrial is unpreserved in the absence of a request for such relief before the trial court (see Matter of David ZZ. v Amanda YY., 214 AD3d 1057, 1058 [3d Dept 2023]).
The court providently exercised its discretion in barring the husband from calling certain witnesses at trial (see David K. v Iris K., 276 AD2d 421, 422 [1st Dept 2000]). The husband could have asked the court-appointed forensic evaluator about Dr. Hymowitz's report and involvement in the matter, but he chose not to. As to the three fact witnesses, one witness's location could not be ascertained, the other would have provided cumulative testimony, and the husband never made an offer of proof as to what facts the third witness would have testified to.
Any contention that the court erred by precluding the husband from testifying about his 2023 income, declining to admit his statement of net worth into evidence, and refusing to allow him to state his income for tax years 2017-2020 fails in light of this Court's affirmance of the January 10, 2023 preclusion order (216 AD3d 512 [1st Dept 2023]), which constitutes the law of the case (see Getty Props. Corp. v Getty Petroleum Mktg., Inc., 166 AD3d 535, 535 [1st Dept 2018]). The court properly adhered to this ruling by declining to admit the husband's 2023 W-2 form and his updated statement of net worth into evidence, which, in any event, was not supported by any financial records on which it was purportedly based. As to the husband's assertion that he was barred from testifying about his 2023 income, the record shows that the husband's attorney failed to ask any questions related to his 2023 income. Finally, the husband does not explain what he would have accomplished by reciting the numbers from his income tax returns, which were already in evidence and available for the court's consideration, especially because he would not have been able to testify about his income in greater detail.
The husband has not demonstrated that the 38-month duration of post-judgment maintenance, calculated using the formula recommended in Domestic Relations Law § 236(B)(6)(f)(1), and given the parties 10-year, 7-month marriage, was an abuse of discretion (see Rennock v Rennock, 203 AD3d 675, 675 [1st Dept 2022]). The court articulated each factor it considered, including the ages of the parties, the length of the marriage, information about the children, the equitable distribution of the marital assets, the wife's contributions to the household during the marriage, as well as the parties' education levels, and past and current careers and incomes. In awarding post-divorce maintenance and setting the duration, the court also expressly considered the wife's testimony regarding domestic violence by the husband against her and the children, the husband's wasteful dissipation of marital assets, his decision to cut off all financial support to the children during the matrimonial proceedings, and his dilatory litigation tactics. Although the wife is arguably self-supporting, the court properly considered the standard of living that the parties established during the marriage in determining the maintenance award.
The court reasonably determined that it need not unquestioningly accept the husband's assertions about his earnings based on his income tax returns and appropriately looked beyond the tax records to consider his earning history and spending during the marriage to impute to him $1 million in annual income (see Warshaw v Warshaw, 173 AD3d 582, 583 [1st Dept 2019]). The husband was the sole equity holder in his businesses and admitted to channeling certain personal expenses, such as the Tesla, through the business, further confusing boundaries between the husband's and his businesses' assets and liabilities. Thus, the court appropriately considered that the husband, whose income declined after the wife commenced the divorce action, had control over how much he was paid.
In deciding to utilize the parties' combined income up to $500,000 in setting support, the court examined whether the capped support "adequately reflects a support level that meets the needs and continuation of the children's lifestyle" and concluded that it did not (Beroza v Hendler, 109 AD3d 498, 500-501 [2d Dept 2013]). During the marriage, the children shared in the bounty of their parents' prosperous and very comfortable standard of living, which included an Upper East Side apartment, garaged luxury cars, private school tuition, international vacations, expensive enrichment and extracurricular activities, an au pair, and dinners outside the home, and the court properly concluded that a $500,000 income cap would satisfy the children's needs and afford them an appropriate lifestyle (see Flom v Flom, 170 AD3d 440, 443 [1st Dept 2019]).
In light of the parties' financial circumstances, the court properly awarded the wife counsel fees in connection with the matrimonial proceeding and the 2023 appellate case (see Domestic Relations Law § 237; DeCabrera v Cabrera-Rosete, 70 NY2d 879, 881 [1987]; Cohen v Cohen, 209 AD3d 405, 405 [1st Dept 2022]). Initially, the husband did not preserve his right to challenge the reasonableness of the counsel fees incurred by the wife because he failed to ask any questions about the fees during the trial (see Winter v Winter, 50 AD3d 431, 432 [1st Dept 2008]). Additionally, we decline to reduce the fee award, given the court's finding that the husband employed harassing litigation tactics, prolonged the proceedings, and exhibited overall obstreperous behavior (see Yentis v Yentis, 218 AD3d 418, 420 [1st Dept 2023]).
Nevertheless, the court erred by including charges for services rendered by the wife's attorney in a related bankruptcy action in the final counsel fee award (see Domestic Relations Law § 237; see also Matter of Yu Wei v Mathews, 165 AD3d 957, 958 [2d Dept 2018]; Zeitlin v Zeitlin, 250 AD2d 606, 606 [2d Dept 1998]). Accordingly, the order is modified to reduce the fee award by $267,454.84.
The North Creek property was sold in February 2025, thereby mooting the husband's appeal from the order appointing the wife as receiver for the sale of the property (see de Luca v de Luca, 231 AD3d 534, 535 [1st Dept 2024]). In any event, it was not error for the court to appoint the wife as receiver for the property to effectuate its sale in light of the husband's failure to pay the mortgage and putting the main marital asset at risk of foreclosure (see Bloom, 222 AD3d at 576).
Finally, the court providently exercised its discretion in denying the husband's request for recusal (see Largo 613 Baltic St. Partners LLC v Stern, 210 AD3d 430, 432 [1st Dept 2022]).
We have considered the remaining arguments and find them unavailing. 
 THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 10, 2026